**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

NORMAN ZILAHY,

                    Plaintiff,

vs.                                              Case No.  3:11-cv-206-J-JRK

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

                    Defendant.
_____/

**OPINION AND ORDER**[1]

**I.  Overview**

Norman Zilahy ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's ("Administration('s)") final decision denying his request for wavier of

recoupment of an overpayment of disability insurance benefits.   Generally, the Social

Security Act ("the Act") requires that when a social security beneficiary has been overpaid,

the Administration must recoup the overpaid benefits.   42 U.S.C. § 404(a)(1)(A)[2]; see also

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 6), filed May 16, 2011; Order of Reference (Doc. No. 7), entered May 17, 2011.

[2]      Section 404(a)(1)(A) provides in relevant part:

With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under section 3720A of Title 31, or shall apply any combination of the foregoing.

(continued...)

20 C.F.R. § 404.501(a).  In certain situations, however, the Act directs the Administration to waive recoupment of an overpayment:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

42 U.S.C. § 404(b); see also 20 C.F.R. § 404.506(a).  Thus, the Act and the Code of Federal Regulations ("Regulations") establish a two-prong test to determine whether a waiver of recoupment of overpayment is appropriate.  First, it must be determined whether the overpaid individual was at fault in connection with the overpayment; and second, it must be determined whether recovery of the overpayment would defeat the purpose of title II of the Act or be against equity and good conscience.  See 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a).  "The burden is upon the claimant to establish the negative prerequisite ('without fault'), before the [Commissioner] considers the second tier of the waiver statute." Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir. 1982).

An individual may be found not to be without fault if the overpayment "resulted from: (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have expected to know was incorrect."  20 C.F.R. § 404.507.

---

[2](...continued)
42 U.S.C. § 404(a)(1)(A) (emphasis added).

The phrase "defeat the purpose of title II" has been defined by the Regulations to mean "to deprive a person of income required for ordinary and necessary living expenses. This determination depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs."  20 C.F.R. § 404.508(a); see also Erickson v. Comm'r of Soc. Sec., 431 F. App'x 809, 812 (11th Cir. 2011) (unpublished) (citation omitted).  In making the determination of whether the purpose of title II would be defeated, an ALJ may consider all of an individual's financial resources, in addition to the individual's income. Valley v. Comm'r of Soc. Sec., 427 F.3d 388, 391 (6th Cir. 2005); Milton v. Harris, 616 F.2d 968, 974 (7th Cir. 1980).  The Regulations provide what is included in "ordinary and necessary expenses":

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical benefits under title XVIII), taxes, installment payments, etc.;
> (2) Medical, hospitalization, and other similar expenses;
> (3) Expenses for the support of others for whom the individual is legally responsible; and
> (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

20 C.F.R. § 404.508(a).

The Regulations further provide that recovery of an overpayment is against equity and good conscience if an individual "[c]hanged his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself[.]"  20 C.F.R. § 404.509(a)(1).

At the administrative level, a claimant bears the burden of showing he or she is eligible for a waiver of collection of overpayment.  See, e.g., 20 C.F.R. § 404.506(c) (providing that the individual seeking waiver of collection of overpayment "gives SSA information to support his/her contention that he/she is without fault in causing the overpayment. . . and that adjustment or recovery would either defeat the purpose of title II of the Act . . . or be against equity and good conscience. . ."); Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1042 (2d Cir. 1984) (citations omitted).

In September 1991, Plaintiff's son, John Zilahy ("Beneficiary"), applied for disability insurance benefits.  Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed June 28, 2011, at 28-30.  The reason for the application was that Beneficiary had been struck by lightening in 1990 which resulted in almost a complete loss of basic functioning for some time.  Tr. at 299-300.  Beneficiary was awarded disability insurance benefits as of February 1991.  Tr. at 55.  After Beneficiary was awarded benefits, Plaintiff was appointed the "representative payee" to receive and spend the benefits on Beneficiary's behalf.  Tr. at 23-26 (application to become payee[3]), 27 (noting a "Date of Selection" of January 1992).   As explained in more detail below, eventually Beneficiary started working, and after working for a number of years, he was found by the Administration to no longer be disabled.  The Administration assessed an overpayment of benefits in the amount of $56,714.00, Tr. at 71-72, 94, which was later reduced to $54,986.00, after a tax refund was collected by the Department of Treasury to pay toward

---

[3]        A duplicate of the application is located at Tr. at 153-56.

the debt, Tr. at 95, 126-27.  Plaintiff asked the Administration to waive recoupment of the overpayment, which request was denied.

The Administration has taken the position that in certain situations, when overpayment is made to a representative payee, both the payee and the beneficiary can be held jointly and severally liable.  See SSR 64-7, 1964 WL 3608, at *2.  Although not clear from the beginning, it is clear that ultimately the Administration took this position in the instant case.  Therefore, in denying the request for a waiver, the Administration made findings with respect to both Plaintiff and Beneficiary.  As to Plaintiff, the Administration ultimately found him not without fault; therefore, the Administration was not required to make any other findings before declining to waive collection of the overpayment.  As to Beneficiary, the Administration ultimately found him to be without fault but found that recovery would not defeat the purposes of title II of the Act or be against equity and good conscience.  Accordingly, the waiver request was denied as to both, and they were held jointly and severally liable for the amount due.  From the Administration's final decision Plaintiff now appeals.  See Compl. (Doc. No. 1), filed March 4, 2011.

## II.  Chronology of Events

On May 11, 2002, the Administration sent Plaintiff a "Notice of Continuing Disability Review" ("May 2002 Notice") in which Plaintiff was notified that the Administration regularly reviews disability cases to ensure individuals are still disabled, and it was "starting to review [Beneficiary]'s disability case."  Tr. at 31-32.  Plaintiff was requested to complete some forms enclosed with the May 2002 Notice and return them to the Administration by May 26, 2002.  Tr. at 31.  The forms are not included in the administrative transcript.  Plaintiff was

also advised that if Beneficiary had worked since his case had last been reviewed, the Administration needed "each employer's name and address, the dates worked, and the amount earned." Tr. at 31. Plaintiff was warned that failure to return the requested information by May 26, 2002 could result in a cessation of benefits. Tr. at 32.

The Administration did not receive anything in response to the May 2002 Notice. Tr. at 34. Accordingly, on August 10, 2002, another notice was sent to Plaintiff ("August 2002 Notice") that stated the failure to return the requested forms could result in the cessation of benefits. Tr. at 34. The administrative transcript does not contain any indication that Plaintiff responded to the August 2002 Notice, although inexplicably, the benefits continued.

The next communication from the Administration to Plaintiff, dated October 6, 2004, contained four documents: two letters; a work and earning summary; and a "Work Activity Report - Employee" form to be returned to the Administration (collectively "October 2004 Notice"). Tr. at 35-49. One of the two letters was substantially similar to the May 2002 Notice. Tr. at 36-37. In the other letter, Plaintiff was advised that the Administration "need[ed] to know more about [Beneficiary's] work." Tr. at 35. He was provided with a work and earning summary, indicating that the Administration was aware Beneficiary had worked for nine (9) different employers from 1992 through 2003. Tr. at 38. Although Beneficiary's work history appears sporadic in earlier years, the summary shows Beneficiary was employed by the City of Jacksonville for years 1997 through 2003. Tr. at 38. Finally, Plaintiff was provided with the "Work Activity Report - Employee" form to fill out and return to the Administration. Tr. at 39-49.

When no response to the October 2004 Notice was received, a representative of the Administration called Plaintiff on January 28, 2005.  Tr. at 102.  Plaintiff advised that Beneficiary was still working for the City of Jacksonville.  Tr. at 102.  The representative noted that when Plaintiff was asked about not submitting the requested forms, Plaintiff stated, "'Why do you need this information if he [is] making too much money anyway[?]'" Tr. at 102 (capitalization omitted) (purportedly quoting Plaintiff).  Also on January 28, 2005, the Administration sent another notice to Plaintiff ("January 2005 Notice") warning that Plaintiff's failure to call or visit the Administration within ten (10) days could result in the cessation of benefits.  Tr. at 50.

On February 7, 2005, the Administration sent Plaintiff a notice stating that "beginning February 2005," the disability insurance benefits for Beneficiary would no longer be paid ("February 2005 Notice").  Tr. at 51-52.  According to the February 2005 Notice, the benefits were being terminated because of one or more of the following reasons: (1) records showed that Beneficiary had not returned requested information; (2) Beneficiary had returned to work; (3) Beneficiary's health had improved; or (4) Beneficiary could not be located.  Tr. at 51.

Administration file notes indicate that as of April 12, 2005, neither Plaintiff nor Beneficiary returned requested medical and work information.  Tr. at 102.  On April 29, 2005, a notice was sent to Plaintiff indicating that the Administration had determined Beneficiary was not entitled to disability insurance payments from "January 1993 through December 1994, May 1995 through July 1995, [and] March 1997 and continuing" ("April

2005 Notice"). Tr. at 64-66. Plaintiff was advised of his right to appeal the determination. Tr. at 65.

Apparently in response to the April 2005 Notice, Plaintiff sent a letter to the Administration dated April 30, 2005. Tr. at 67. Plaintiff indicated that "[d]uring [Beneficiary's] rehabilitation, he took a series of jobs . . . but was time and again let go because he was unable to follow orders or remember his duties and responsibilities . . . ." Tr. at 67. Plaintiff stated that the "Administration obviously knew [Beneficiary] was working and paying taxes [and the Administration was] receiving periodic payee's reports from [Plaintiff]." Tr. at 67. Plaintiff then posed the following question: "[I]f the [Administration] was aware of [Beneficiary's] work history, earnings and tax payments, and that he had exceeded eligibility requirements, why was notification delayed for thirteen years?" Tr. at 67. Plaintiff stated that "[s]ince [Beneficiary] is and will be impaired for life, [Plaintiff and Beneficiary] assumed [Beneficiary] was entitled" to benefits. Tr. at 67.

Later, on January 8, 2007, the Administration sent Beneficiary (as opposed to Plaintiff) a notice stating that Beneficiary owed an overpayment amount of $56,714.00 due to collecting benefits to which he was not entitled ("January 2007 Notice"). Tr. at 71-74. An April 19, 2007 "statement" of amount due and owing was sent to Plaintiff. Tr. at 94. At some point, the debt was reported to the credit bureau. Tr. at 127. The amount due was later reduced to $54,986.00 after the Department of Treasury withheld a tax refund to pay toward the debt. Tr. at 95, 126-27.

On February 4, 2007, Plaintiff filed a Request for Waiver of Overpayment ("Request for Waiver") on behalf of Beneficiary. Tr. at 75-82. In the Request for Waiver, Plaintiff

checked a box indicating that "[t]he overpayment was not [Beneficiary's] fault and [he could not] afford to pay the money back and/or it is unfair for some other reasons." Tr. at 75. Plaintiff stated that Beneficiary was living with him "early on" when the overpayments were received, but Plaintiff had not received the overpaid money. Tr. at 76. Plaintiff admitted that he had not notified the Administration of the events that caused an overpayment, stating "we had no idea that [Beneficiary] was overpaid until he was billed 56K by [the Administration]." Tr. at 76 (capitalization omitted). Plaintiff also provided Beneficiary's then-current financial information as requested. Tr. at 78-81. As far as assets, Plaintiff reported Beneficiary and his dependents (Beneficiary's wife and child) had $4,000.00 in cash and stocks. Tr. at 78. Plaintiff also reported Beneficiary owned a boat worth $600.00. Tr. at 78. As far as income, Plaintiff reported Beneficiary had monthly take-home pay of $1,500.00 from the City of Jacksonville and Beneficiary's wife had monthly take-home pay of $1,900.00. Tr. at 79. When asked to elaborate on Beneficiary's and his wife's income, Plaintiff put "N/A" in the column asking for an explanation of the wife's income. Tr. at 79. As far as expenses, Plaintiff reported Beneficiary had $2,913.93 per month.[4] Tr. at 80.

On June 13, 2007, the Administration sent Plaintiff a letter stating that collection of the overpayment would not be waived. Tr. at 109-11. A "Waiver Determination" form filled out by an Administrative representative and dated June 13, 2007 indicates that Beneficiary was overpaid, he was at fault, and recovery should not be waived against Beneficiary. Tr. at 106-07.

---

[4]    After an automatic additional $25 adjustment, the adjusted monthly expenses totaled $2,938.93. Tr. at 81.

On June 28, 2007, Plaintiff filed a timely Request for Hearing by Administrative Law Judge ("ALJ") on behalf of Beneficiary.  Tr. at 113-14.  On August 5, 2008, a hearing was held before an ALJ.[5]  Tr. at 285-329.  Plaintiff and Beneficiary were represented by an attorney during the hearing.  Tr. at 287.  Plaintiff appeared and testified, but Beneficiary apparently did not appear.  Tr. at 285-329.

Plaintiff testified and steadfastly maintained throughout the hearing that he had not been notified by the Administration at any time prior to the questioning of Beneficiary's work status that Beneficiary could not work and receive disability insurance benefits.  Tr. at 291, 302, 308.  Plaintiff stated he believed Beneficiary could still collect disability benefits while working because he was still impaired.  Tr. at 304, 308.  Plaintiff also stated that he was never informed about a trial work period[6] and that he was never told anything about there being limits on the amount of earnings Beneficiary could have if he returned to work.  Tr. at 302.

Plaintiff testified he knew he had a duty to report Beneficiary's earnings, and he "religiously" sent forms called "payee reports" to the Administration.  Tr. at 292-94, 306.  The payee reports were due every six (6) months and apparently documented how the disability payments were being spent.  Tr. at 292, 310.  According to Plaintiff, he also gave information about Beneficiary's earnings in the payee reports.  Tr. at 292-93.  The payee

---

[5]     The originally-scheduled April 15, 2008 hearing was rescheduled because Beneficiary had suffered a work-related accident.  Tr. at 281-84.

[6]     The Regulations provide for a "trial work period," during which a claimant "may test [his or her] ability to work and still be considered disabled."  20 C.F.R. § 404.1592(a).  The claimant is allowed to "perform services . . . in as many as 9 months, but these months do not have to be consecutive."  Id.

reports do not appear in the administrative transcript.  Plaintiff stated he did not keep copies of the payee reports.  Tr. at 292.

Plaintiff stated he originally received "hard checks" for Beneficiary, but "approximately three or four years before this all happened," the Administration began directly depositing the monthly payments into an account in Beneficiary's name only.  Tr. at 311-12.  Plaintiff did not recall whether he verbally made the request to switch or filled out a form.  Tr. at 312-13.  The administrative transcript does not contain any documentation of the request to switch the payments, although it does contain Beneficiary's bank account statements dated January 2002 through February 2005, which show monthly deposits from the Administration.  Tr. at 181-257.  Plaintiff testified that during the time in which the direct deposits were occurring, Beneficiary was living on his own.  Tr. at 312.  Also during this time, Plaintiff did not fill out any payee reports because they were no longer sent to him. Tr. at 312.

Following the hearing, Plaintiff's attorney submitted a letter to the ALJ, Tr. at 163-64, and attached "A Guide for Representative Payees" ("Guide") which is presumably given to individuals who become payees, Tr. at 165-77.  The Guide instructs that a payee "will . . . need to tell Social Security about changes that may affect the beneficiary's eligibility" to receive benefits.  Tr. at 166.  One of the reportable changes listed is if "[t]he beneficiary starts or stops working, no matter how little the amount of earnings[.]"  Tr. at 173.

### III. ALJ's Decision/Appeals Council Ruling

#### A.  ALJ's Decision

On November 19, 2008, the ALJ issued a written Decision in which he found Plaintiff and Beneficiary were ineligible for a waiver of overpayment.  Tr. at 16-22.  However, the body of the Decision focuses solely on Plaintiff's culpability.  Tr. at 17-22.  First, the ALJ found Plaintiff "was not 'without fault' in causing the overpayment[.]"  Tr. at 17.  The ALJ focused on Plaintiff's testimony that he knew he was obligated to report Beneficiary's work activity.  Tr. at 18, 20.  The ALJ recognized that Plaintiff testified he submitted payee reports that supposedly documented Beneficiary's work status, but the ALJ stated that none of the payee reports appeared in the administrative transcript.  Tr. at 18.  Also, the ALJ stated that Plaintiff's testimony was inconsistent with evidence reflecting that in 2005, when asked to submit work activity report forms in connection with the disability review, Plaintiff had failed to submit them and then questioned the Administration as to why it needed the information if Beneficiary was "'making too much money anyway.'"  Tr. at 18.  The ALJ found incredible Plaintiff's testimony that he was unaware Beneficiary's work activity could impact his benefits.  Tr. at 19.  Specifically, the ALJ found Plaintiff "knew that he was responsible for furnishing information about [Beneficiary's] work activity to the . . . Administration, and he knew that information about [Beneficiary's] work activity was material to his eligibility for disability payments."  Tr. at 18.

In addition, the ALJ pointed to the application that Plaintiff signed to become a representative payee, Tr. at 19, which states, "I . . . understand that I may be held personally liable for repayment if I misuse the payments or if I am found at fault with respect

to any overpayment of benefits," Tr. at 26 (capitalization omitted). The ALJ concluded Plaintiff had not met his burden of showing he was not without fault in causing the overpayment. Tr. at 18; see also Tr. at 20. The ALJ also noted that Plaintiff's "allegations, in general, are not entirely credible, because he has a history of being uncooperative with the . . . Administration," and because he "misrepresented [Beneficiary's] liquid assets and expenses to the . . . Administration." Tr. at 20. As to the alleged misrepresentations, the ALJ provided examples of Plaintiff's report being inconsistent with Beneficiary's bank statements and mortgage statements. Tr. at 20.

The ALJ next determined alternatively that even if Plaintiff were without fault, "recovery of the overpayment would not be against equity and good conscience, or defeat the purpose of Title II by depriving either [Beneficiary] or [Plaintiff] of the income required for ordinary and necessary living expenses." Tr. at 20 (citations omitted). The ALJ referred to his prior finding that Plaintiff had misreported Beneficiary's assets and expenses, and the ALJ stated that Plaintiff had not met his burden of showing recovery was either against equity and good conscience or would defeat the purposes of the Act because "[a]s noted above, no such evidence was presented" by Plaintiff. Tr. at 20.

The ALJ also addressed some arguments made by Plaintiff's attorney at the hearing. First, Plaintiff's attorney argued Plaintiff was no longer the representative payee beginning when the payments were directly deposited into Beneficiary's account. Tr. at 21. The ALJ observed that "[t]here is no evidence . . . that [Plaintiff] advised the . . . Administration that he was no longer willing to serve as [Beneficiary's] representative payee." Tr. at 21. Accordingly, the ALJ found Plaintiff "remained the representative payee of record through

the date of the overpayment." Tr. at 21.  Second, Plaintiff's attorney argued Plaintiff did not

receive an accounting of the months of overpayment.  Tr. at 21.  The ALJ pointed to the

April 2005 Notice that specifically set out the months of overpayment.  Tr. at 21 (citing Tr.

at 64-66).  The ALJ further noted that neither Plaintiff nor Beneficiary had requested an

accounting.  Tr. at 21.  Third, Plaintiff's attorney argued the file was incomplete.  Tr. at 21.

The ALJ noted that he had provided "ample time and opportunity" for Plaintiff to submit

evidence to support his allegations, and that the record had been left open for three (3)

months after the hearing, but that "no further evidence was received."  Tr. at 22.

        The ALJ concluded by making the following findings: (1) Beneficiary was overpaid;

(2) Plaintiff was the representative payee throughout the overpayment period; (3) Plaintiff

was not without fault in causing and accepting the overpayment; and (4) recovery is not

waived against Plaintiff or Beneficiary.  Tr. at 22.

## B.  Appeals Council Ruling

        Plaintiff asked the appeals council to review the ALJ's Decision.  Tr. at 264-68.  The

appeals council granted Plaintiff's request for review.  Tr. at 269-74.  On January 7, 2011,

the appeals council issued a decision modifying the ALJ's Decision.  Tr. at 7-10.  First, the

appeals counsel "adopt[ed] the [ALJ]'s statements regarding the pertinent provisions of the

Social Security Act, Social Security Administration Regulations, Social Security Rulings and

Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable."  Tr.

at 7 (emphasis added).

        Next, the appeals council found the ALJ erred when he "made actual findings of fault

with respect only to the representative payee [(Plaintiff)]."  Tr. at 7.  Further, the appeals

council explained that according to Social Security Ruling 64-7, the ALJ's alternative findings as to Plaintiff (regarding defeating the purpose of the Act and equity and good conscience) were not required.  Tr. at 8 (citing SSR 64-7).  That ruling states when an overpayment is made and a representative payee is involved, "<u>the payee is not liable if he used the amounts received for the benefit of the beneficiary and was without fault with regard to the overpayment</u>."  SSR 64-7 at *2.  Relying on this language, the appeals council stated that the alternative findings made by the ALJ "are not relevant to waiver of an overpayment made to a representative payee."  Tr. at 8.

As to Plaintiff, the appeals council stated that it "concurs in and adopts the [ALJ]'s conclusion that the representative payee [(Plaintiff)] was not 'without fault' in causing or accepting the entire overpayment in question."  Tr. at 8.  The appeals council elaborated some by agreeing that Plaintiff was never relieved of his obligation as a payee; that regardless of whether Plaintiff received written or verbal instructions about his duties, Plaintiff agreed on the application to become payee "that he would comply with the conditions for reporting certain events, which were listed on the attached sheet(s) and which he agreed he would maintain for his records, and for returning checks for which there was no entitlement"; and that Plaintiff "was responsible for knowing and understanding the conditions under which he accepted checks on behalf of his son." Tr. at 8-9.  The appeals council clarified the proper standard is whether Plaintiff failed to furnish information which he knew or should have known to be material and whether he accepted payments he knew or should have known were incorrect.  Tr. at 9.  "Under this standard," stated the appeals

council, "[Plaintiff] was not 'without fault' in causing or accepting the overpayment."  Tr. at 9.

The appeals council then made the following findings with respect to Beneficiary.  First, Beneficiary was without fault in causing the overpayment.[7]  Tr. at 8.  Second, the appeals council "agree[d] with the [ALJ]'s conclusion that [Plaintiff] did not provide documentation of the income, assets, and expenses of [Beneficiary's] household and that there is no evidence that recovery would be against equity and good conscience."  Tr. at 8.  Third, because of the lack of evidence, the appeals council found recovery of the overpayment could not be waived against Beneficiary.  Tr. at 8.

The appeals council concluded by finding that "recovery of the overpayment of disability insurance benefits may not be waived from either [Beneficiary] or [Plaintiff].  The decision of the [ALJ] is modified accordingly."  Tr. at 10.

### IV.  Standard of Review

This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)); see also Coulston v. Apfel, 224 F.3d 897, 901-02 (8th Cir. 2000) (Bye, J., concurring) (in a case in which the plaintiff's fault in causing a payment of benefits was at issue, noting that when reviewing the Commissioner's final decision, "we are not concerned

---

[7]     The appeals council gave Beneficiary the benefit of any doubt by making this finding, but it noted that "[t]he evidence shows that [Beneficiary] has been able to sustain employment for many years, has married, and has a child, all of which suggest that he may have had the ability to understand that his work and earnings were not compatible with continuing entitlement."  Tr. at 8.

with whether [the plaintiff] met his burden of proving to the Commissioner that he was not at fault [for overpayment]" and instead the sole concern is whether the decision regarding waiver is supported by substantial evidence).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## V.  Discussion

## A.  Completeness of Administrative Transcript

Plaintiff first complains that the administrative transcript is incomplete.  Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 13; "Pl.'s Mem."), filed August 1, 2011, at 4-5, 22-23.  Plaintiff is correct that the administrative transcript does not contain payee reports or attachments to certain letters.  Plaintiff contends that he

reported Beneficiary's work status on the payee reports.  However, a blank "Representative Payee Report" was provided to Plaintiff and Plaintiff's counsel by the appeals council (for informational purposes only) and included in the administrative transcript, Tr. at 279-80; the report does not ask for information regarding a claimant's work status or earnings, Tr. at 279-89.  Thus, Plaintiff's allegation that he included such information on the payee reports is dubious at best.   In any event, given that it was Plaintiff's burden at the administrative level to show his and his son's entitlement to a waiver, coupled with Plaintiff's agreement upon becoming Beneficiary's payee that he would keep records of pertinent documents but his failure to do so, the undersigned cannot say that remand is required on this issue.[8]

## B.  The Administration's Findings Regarding Beneficiary

Plaintiff next raises the issue of whether the finding that Beneficiary must pay back the overpayment is supported by substantial evidence.  Pl.'s Mem. at 1, 12-15.  As stated above, the ultimate findings with respect to Beneficiary were that he was without fault but recovery would not be against the purposes of title II of the Act or against equity and good conscience.

Plaintiff takes issue with the appeals council's statement that it agreed with the ALJ's finding that "[Plaintiff] did not provide documentation of the income, assets, and expenses of [Beneficiary's] household and that there is no evidence that recovery would be against equity and good conscience." Tr. at 8; see Pl.'s Mem. at 13.  Plaintiff argues the finding "is simply not true," and points out that when he submitted a request to waive the overpayment,

---

[8]        As an aside, it is evident that the Administration likely does not have the "missing" information and Plaintiff obviously did not keep copies of it.  Therefore, even if the Court were to remand for further development, such a remand would be pointless.

he documented specific income and expenses.  Pl.'s Mem. at 13.  Plaintiff also argues that recovery indeed would defeat the purposes of title II of the Act "as [Beneficiary] could not afford such a repayment without depriving him and his family of the income required for their ordinary and living expenses," and recovery would be against equity and good conscience. Id. at 13-15.

Defendant apparently recognizes that the finding by the appeals council that Plaintiff did not produce evidence of income, assets, and expenses was erroneous, but he argues that "the documentation Plaintiff submitted provides substantial evidence that recovery of the overpayment from Beneficiary would not defeat the purposes of Title II."  Memorandum in Support of the Commissioner's Decision (Doc. No. 14; "Def.'s Mem."), filed September 30, 2011, at 17.  Defendant also argues Beneficiary was not prejudiced by the appeals council's misstatement, and it was at most harmless error.  Id. at 17-18 (citations omitted). As to the allegation that recovery would defeat the purposes of title II of the Act, Defendant contends that although Beneficiary may not be able to repay the entire amount of the overpayment at one time, the administrative transcript shows he can afford to pay it back in monthly installments. Id. at 18 (citation omitted).  As to the allegation that recovery would be against equity and good conscience, Defendant argues that the administrative transcript does not contain any evidence upon which to make such a finding.  Id. at 19-20.

A close look at the ALJ's Decision shows that when he stated "no . . . evidence was presented" on the issue of whether recovery from Beneficiary would defeat the purposes of Title II of the Act or be against equity and good conscience, he referred to an earlier portion of his Decision.  Tr. at 20 (stating, "As noted above . . .").  The portion of the

Decision to which the ALJ referred sets out in detail the information Plaintiff provided regarding Beneficiary's income, assets, and expenditures, and finds that Plaintiff "misrepresented" such information when he filed a request for waiver on February 4, 2007. Tr. at 20. The ALJ stated that Plaintiff represented Beneficiary had "3,200.00 in Walmart stock and $800 in a checking account," but when notified of the overpayment in February 2005, Beneficiary's savings account showed a balance of $6,219.91, his checking account showed a balance of $764.90, and he also had a "CD that would mature in April 2005 [worth] $7,183.24," so his assets totaled $14,168.05. Tr. at 20; see Tr. at 256. Although the waiver request was filed about two (2) years after the notification of overpayment, the ALJ's point is well taken in that Beneficiary seemed to have many more assets than were reported. Additionally, the ALJ noted that Plaintiff overstated Beneficiary's monthly expenses by at least $105.00 because he reported property taxes in that amount when the property taxes were actually included as part of Beneficiary's mortgage payment. Tr. at 20; see Tr. at 80, 91. The ALJ also discredited Plaintiff generally because of his history of being uncooperative with the Administration. Tr. at 20. As an example of the failure to be cooperative, the ALJ pointed to the waiver request in which Plaintiff refused to give information about Beneficiary's wife.[9] Tr. at 20; see Tr. at 79. Thus, the logical inference from the ALJ's statement (and the appeals council's ultimate adoption of the statement) is that there was no credible evidence upon which to base a finding that recovery would defeat the purpose of title II of the Act or be against equity and good conscience. Plaintiff failed

---

[9]     Plaintiff testified he did not provide this information because he did not think she should be held responsible in that she had not benefitted from the overpayment. Tr. at 314.

to meet his burden to come forward with credible evidence that recovery from Beneficiary would defeat the purpose of title II of the Act or be against equity and good conscience. The Administration's final decision as to Beneficiary is supported by substantial evidence.

## C.  The Administration's Findings Regarding Plaintiff

Plaintiff lastly raises the issue of whether the finding that he was not without fault in causing the overpayment is supported by substantial evidence.  Pl.'s Mem. at 1, 16-23. Plaintiff argues, as he did before the Administration, that he was relieved of his duties as a representative payee when the monthly benefits began to be deposited directly into Beneficiary's account.  Id. at 16-19.  Plaintiff then argues that although he knew of his obligation to report work activity, he did not know about the impact that Beneficiary's work had on his eligibility for benefits and therefore he cannot be held to be with fault.  Id. at 19-21.

Defendant responds that Plaintiff failed to prove he was without fault in causing and accepting the overpayments.   Def.'s Mem. at 8-13.   Defendant also contends the administrative transcript does not support Plaintiff's argument that Plaintiff was relieved of his representative payee duties.  Id. at 13-15.

As to Plaintiff's argument that he was relieved of his duty as a representative payee, substantial evidence supports the Administration's conclusion that he was not.  Although it is clear that payments eventually were made to Beneficiary himself, there is no evidence in the administrative transcript that Plaintiff officially asked to be relieved of his obligations. In fact, Plaintiff continued throughout the administrative process to act on Beneficiary's

behalf, and the vast majority of communications in the file reflect that they were sent to Plaintiff even when Beneficiary was not living with Plaintiff.

Additionally, the ALJ made certain credibility determinations related to the issue of Plaintiff's fault.  Contrary to Plaintiff's contention that the Court is limited to review of the appeals council's decision (in which no credibility determinations were made), the Court finds otherwise.  The appeals council specifically adopted the ALJ's findings regarding "the evidentiary facts, as applicable."  Tr. at 7 (emphasis added).  Consequently, the appeals council adopted the ALJ's credibility determinations.  The ALJ found incredible Plaintiff's "testimony that he did not know his son's work activity would affect his eligibility to continue to receive disability payments[.]"  Tr. at 19.  This finding is supported by substantial evidence.

Regardless of whether he knew that the work would affect the disability payments, substantial evidence supports the ultimate finding that Plaintiff did not prove he was without fault.  Plaintiff did not submit any evidence showing he reported Beneficiary's work status and earnings throughout the time in question.  In fact, as the Administration noted, the more likely scenario is that he did not: when specifically asked to provide such information upon the file being reviewed by the Administration, Plaintiff refused on multiple occasions.  Thus, there is substantial evidence to support the findings that Plaintiff failed to furnish information which he knew or should have known to be material and that he accepted payments he knew or should have known were incorrect.  See 20 C.F.R. § 404.507(b), (c).  The ultimate finding that Plaintiff was not without fault in causing the overpayment is supported by substantial evidence.

## VI.  Conclusion

It is certainly admirable that Beneficiary has chosen to make a better life for himself and his family by working and earning an income despite his impairments.  Nevertheless, the Administration has rules about the amount of work that can be performed and income earned before benefits can no longer be paid.  The Administration also has rules stating that it must recoup any overpayment of benefits in the absence of certain circumstances. The Administration's finding that those circumstances are not present in the instant case is supported by substantial evidence.  Accordingly, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 19, 2012.


JAMES R. KLINDT
United States Magistrate Judge



kaw

Copies to:

Counsel of Record